■ JUDAL INDUSTRIES, INC., Appellant, v WELSBACH ELECTRIC CORP., Respondent.—In an action to recover damages for breach of contract, the plaintiff Judal Industries, Inc. appeals from a judgment of the Supreme Court, Nassau County (Ain, J.), entered October 24, 1986, which is in favor of the defendant and against it, after a nonjury trial.

Ordered that the judgment is affirmed, with costs.

The plaintiff Judal Industries, Inc. (hereinafter Judal) is a "middleman" in the business of securing electrical equipment for electrical contractors. The defendant Welsbach Electric Corp. (hereinafter Welsbach), an electrical subcontractor under contract to install lighting along the length of the Cross Island Parkway in Queens, is a wholly owned subsidiary of Jamaica Water Properties, Inc. (hereinafter Jamaica Properties). Welsbach was to begin installation of the poles by July 1, 1985. During March and April of 1985 Welsbach negotiated with Judal to obtain lampposts to complete the job, the proposed manner of payment to be guaranteed by Jamaica Properties. Judal's president Schreer knew that the job was a "rush" job.

Welsbach sent Judal a purchase order for a specific quantity of lampposts at a specific price on May 10, 1985. Payment terms were "Net 30 days". Delivery was to be within 60 to 90 days from receipt of the order. Time was of the essence, and Welsbach retained the right to cancel the order if deliveries were not made in accordance with the times specified in the order or if shop drawings to be supplied to Welsbach were not approved by the New York State Department of Transportation. On May 13, 1985, Judal sent a confirmatory memorandum which contained the same price and quantity of goods and purported to accept Welsbach's offer, but which omitted

the payment term and provided that delivery would be made 60 to 90 days from Judal's receipt of the Jamaica Properties' letter of guarantee.

On or about May 20, 1985, Flagpoles, Inc. (hereinafter Flagpoles), an electrical supplier, delivered to Welsbach drawings of lampposts it intended to supply to Judal. After reviewing the drawings from May 20 to 22, a Welsbach engineer sought to reach Judal three times by telephone concerning problems with the drawings on three different days: May 23, 24, and 28, 1985. He received only a message on Schreer's answering machine each time. On May 28, 1985, Welsbach sent a mailgram to Judal which noted that the "lack of response * * * has raised serious questions on your ability to expedite the order". The mailgram further stated that Judal's response was necessary to insure that the order was not jeopardized. On May 31, 1985, Welsbach sent Judal another mailgram stating that due to the lack of Judal's response and due to problems with the drawings, the order was terminated.

For a contract to be enforceable, it must be definite as to its essential terms (see, Calamari and Perillo, Contracts § 2-13, at 43 [2d ed]; 21 NY Jur 2d, Contracts, § 20). In a contract for the sale of goods, the essential terms are quantity, price, and time and manner of delivery (see, e.g., Lubrication & Maintenance v Union Resources Co., 522 F Supp 1078; City Univ. v Finalco, Inc., 129 AD2d 494). Although a contract for the sale of goods will not fail for indefiniteness if the parties intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy (see, UCC 2-204; Kleinschmidt Div. v Futuronics Corp., 41 NY2d 972, 973), when a dispute over essential terms manifests a lack of intention to contract, no enforceable contract results (Kleinschmidt Div. v Futuronics Corp., supra, at 973).

At bar, the Judal confirmation changed an essential term, the delivery term. Welsbach's purchase order provided for delivery to be 60 to 90 days from Judal's receipt of the order, with payment "Net 30 days". Judal's confirmation provided that delivery was to be 60 to 90 days from receipt of the letter of guarantee from Jamaica Properties. Further, Welsbach's purchase order stipulated that time was to be of the essence and, moreover, Judal was aware that the job was to be a "rush" job. In light of the foregoing, the parties' dispute over the delivery term manifested a lack of agreement as to the contract, thereby precluding the formation of an enforceable contract (see, e.g., Kleinschmidt Div. v Futuronics Corp., supra, at 973). Nor was there overt conduct subsequent to the ex-

change of the purchase order and confirmation to suggest that Welsbach intended to be bound by the terms in the confirmation.

The plaintiff's remaining contentions have been considered and have been found to be without merit. Mangano, J. P., Bracken, Kooper and Spatt, JJ., concur.